U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2012 MAY -3 PM 4:04
CLERK
BY ___PM___
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Robert A. Bloomer, Jr., )
)
    Plaintiff, )
)
v. ) Case No. 5:11-cv-35
)
U.S. Department of Homeland )
Security, )
)
    Defendant. )

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**
(Docs. 20 and 23)

    This matter comes before the court on the parties' cross-motions for summary judgment. The Complaint in this case alleges that Defendant U.S. Department of Homeland Security ("DHS") failed to properly comply with Plaintiff Robert A. Bloomer Jr.'s request for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. DHS is represented by Carol L. Shea, AUSA. Mr. Bloomer is representing himself. The court heard oral argument on the cross-motions on January 9, 2012.

**I.**     **Factual Background.**

    Mr. Bloomer is seeking records pertaining to Jose Carlos Chavez-Vernaza ("Chavez"), a Peruvian national who was convicted of federal drug crimes in 1986. Mr. Chavez was allegedly released from federal prison in 1993. Facing criminal charges in Peru, he fought the United States government's efforts to deport him to his home country, and ultimately fled to Mexico.

    Mr. Chavez was subsequently allowed to return to the United States, allegedly with the assistance of an FBI agent and the knowledge of an Assistant U.S. Attorney. Documents produced pursuant to Mr. Bloomer's FOIA request reveal information about Mr. Chavez's activities in Portland, Oregon in 2000, including his efforts to purchase a

house valued at approximately $950,000. Various federal agents were involved in collecting this information, and the names of those agents have been redacted. The name of an Assistant United States Attorney ("AUSA") has also been redacted. Further redactions include financial information and law enforcement codes.

When Mr. Bloomer's FOIA request was first received, it was referred to U.S. Citizenship and Immigration Services ("CIS"), an agency within DHS. Both CIS and Immigration and Customs Enforcement ("ICE") subsequently produced relevant documents to Mr. Bloomer. In September 2011, after this lawsuit had begun, CIS produced an additional fourteen pages from the Treasury Enforcement Communications System ("TECS"), a law enforcement database. (Doc. 20-3.) The parties' cross-motions for summary judgment pertain to redactions set forth within these latter fourteen pages.

## II. Conclusions of Law and Analysis.

DHS has provided a Vaughn Index with respect to its redactions. The Index is supported by an affidavit from Ryan Law ("Law Declaration"), the Deputy FOIA Officer for ICE. Mr. Law explains that he reviewed each record "line by line," and that the redacted items are protected by specific exemptions under FOIA. (Doc. 20-1 at 11.)

Mr. Bloomer has two objections to DHS's redactions. He first asserts that the Vaughn Index is "boilerplate" and therefore insufficient. Although he concedes that he is not interested in much of the redacted material, such as "TECS secret codes or case numbers," he is nonetheless "unwilling to sign off on redactions that are not properly described or explained." (Doc. 23 at 3.) Second, Mr. Bloomer argues that he is entitled discover the identities of two individuals: (1) the FBI agent who allegedly arranged for Mr. Chavez's return to the United States, and (2) the AUSA who spoke to Mr. Chavez about Chavez's status as a government informant.

### A. Summary Judgment Standard.

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact

exists. *See Celotex*, 477 U.S. at 323; *see also FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994). When making this determination, a court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in his or her favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Lucente v. IBM Corp.*, 310 F.3d 243, 253 (2d Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lucente*, 310 F.3d at 253 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When deciding cross-motions for summary judgment, a court must consider each motion independent of the other, and the standard to be applied is the same as that for individual summary judgment motions. *Bank of N.Y. Trust, N.A. v. Franklin Advisers, Inc.*, 674 F. Supp. 2d 458, 462-63 (S.D.N.Y. 2009).

**B. Jurisdiction and Summary Judgment in FOIA Cases.**

The central purpose of FOIA is to "ensure an informed citizenry . . . [which is] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *accord U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (citation omitted). Under the statute, "any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions." *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994). By enacting exemptions, "Congress recognized . . . that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166-67 (1985).

FOIA confers jurisdiction on the district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). However, "jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records. Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's

3

disclosure requirements." *Tax Analysts*, 492 U.S. at 142 (internal quotation marks and citation omitted). It is therefore "the responsibility of the federal courts to conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure. The burden of proof, upon such review, rests with the agency asserting the exemption, with doubts resolved in favor of disclosure." *A. Michael's Piano, Inc.*, 18 F.3d at 143 (citations omitted).

Here, the parties submit that they are each entitled to summary judgment on Mr. Bloomer's FOIA claims. A district court "may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quotation marks omitted). "Affidavits or declarations . . . giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden . . . [and] are accorded a presumption of good faith." *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (citation omitted). When agency submissions are adequate on their face, a district court has the discretion to "forgo discovery and award summary judgment on the basis of affidavits." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978). Indeed, it has been held that "FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008).

    C.    **Whether The Exemptions Asserted By DHS Apply In This Case.**

    1.    **Exemption 3.**

DHS argues that its redactions are appropriate under Exemptions 3, 6, 7(C), and 7(E) to FOIA. Exemption 3 applies to matters "specifically exempted from disclosure by statute" if the statute meets certain requirements. 5 U.S.C. § 522(b)(3). The Supreme Court has set forth a two-part analysis to be employed by a court when reviewing an agency's invocation of Exemption 3. *See CIA v. Sims*, 471 U.S. 159, 167 (1985). First, the court must determine whether the statute designated by the withholding agency is one

properly within the bounds of Exemption 3. *See id.* If so, the court must then determine whether the withheld information meets the requirements of that statute. *See id.; see also A. Michael's Piano, Inc.*, 18 F.3d at 143; *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990); *ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 554 (S.D.N.Y. 2005).

DHS has made one redaction under Exemption 3. (Doc. 20-3 at 7.) In doing so, it relies on the Bank Secrecy Act, which exempts from disclosure information that has been reported by financial institutions to the Treasury Department, and is subsequently shared with other government agencies. *See* 31 U.S.C. § 5319. The Bank Secrecy Act is properly within the bounds of Exemption 3 because it "mandates withholding in such a manner as to leave no discretion on the issue to the agency." *Berger v. IRS*, 487 F. Supp. 2d 482, 496 (D.N.J. 2007); *see* 5 U.S.C. § 552(b)(3)(A) (statute must "require[ ] that the matters be withheld from the public in such a manner as to leave no discretion on the issue.").

As to the second prong of the test, DHS's Vaughn Index explains that the redaction is part of a "Report of Investigation from the [TECS] database." (Doc. 20-2 at 3.) The Law Declaration further explains that "the information ICE redacted concerned current transaction reports (CTRs) from financial institutions, as required by the Bank Secrecy Act." (Doc. 20-1 at 6.) Reports from financial institutions to the Treasury Department are clearly covered by the Bank Secrecy Act. *See* 31 U.S.C. § 5319 ("a report and records of reports are exempt from disclosure under [FOIA]").

Mr. Bloomer asserts generally that DHS's redactions "are not properly described or explained." (Doc. 23 at 3.) However, "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Wilner v. NSA*, 592 F.3d 60, 72 (2d Cir. 2009) (citation omitted). Mr. Bloomer does not challenge DHS's assertion that the redacted material is protected under the Bank Secrecy Act. Nor does he seek the disclosure of information provided to the Treasury Department by financial

institutions. The court therefore finds that DHS has properly asserted Exemption 3 in this instance.

## 2. Exemptions 6 and 7(C).

DHS next asserts Exemption 6, which protects personnel and medical files, and "similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Second Circuit has made clear that investigative files are "similar files" for purposes of Exemption 6. *See Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005); *see also U.S. Dep't of State v. The Washington Post Co.*, 456 U.S. 595, 602 (1982) (finding that Exemption 6 covers government records which can be identified as applying to a specific individual).

In every instance where DHS asserts Exemption 6, it also asserts Exemption 7(C), under which the government may withhold "records or information" that are "compiled for law enforcement purposes" and that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* at § 552(b)(7)(C). Exemption 7(C) and Exemption 6 "are specifically aimed at protecting the privacy of personal information in government records." *Assoc. Press v. U.S. Dep't of Justice*, 2007 WL 737476, at *4 (S.D.N.Y. Mar. 7, 2007), *aff'd*, 549 F.3d 62 (2d Cir. 2008). Of the two, "Exemption 7(C) is more protective of privacy than Exemption 6," because the former "applies to any disclosure that 'could reasonably be expected to constitute' an invasion of privacy that is 'unwarranted,' while the latter bars any disclosure that 'would constitute' an invasion of privacy that is 'clearly unwarranted.'" *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994); *see also Reporters Committee*, 489 U.S. at 756. Accordingly, where both exemptions are implicated, a court may "apply the stricter 7(C) evaluation of privacy interests." *Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2002), *vacated and remanded*, 541 U.S. 970 (2004), *aff'd* 380 F.3d 110 (2d Cir. 2004).

"To determine whether the documents in question 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' a court must balance the individual's privacy interest against the public's interest in disclosure." *Amnesty Intn'l*

6

*USA v. CIA*, 728 F. Supp. 2d 479, 523 (S.D.N.Y. 2010) (citing *Reporters Comm.*, 489 U.S. at 762-63); *see also Ferguson v. FBI*, 957 F.2d 1059, 1069 (2d Cir. 1992)). "[I]ndividuals, including government employees and officials, have privacy interests in the dissemination of their names." *Massey v. FBI*, 3 F.3d 620, 624 (2d Cir. 1993); *see also Assoc. Press*, 549 F.3d at 65. "On the other side of the scale, '[t]he *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.'" *Amnesty Intn'l USA*, 728 F. Supp. 2d at 523 (quoting *Bibles v. Or. Natural Desert Assoc.*, 519 U.S. 355, 355-56 (1997) (quotation marks and citations omitted)).

DHS argues that Mr. Bloomer's requests raise significant privacy concerns, while his assertions of a public interest are largely speculative. The factual assertions underlying Mr. Bloomer's arguments for disclosure are that an FBI agent helped to orchestrate the return of a convicted drug offender to the United States, and that an AUSA was also involved. Mr. Bloomer's suspicions are based largely upon statements reported to have come from Mr. Chavez himself.

The court agrees that the privacy concerns in this case are legitimate. The Second Circuit has "recognized that government investigative personnel may be subject to harassment or embarrassment if their identities are disclosed." *Wood*, 432 F.3d at 88 (citing *Halpern v. FBI*, 181 F.3d 279, 297 (2d Cir. 1999) (holding that FBI agents and other government employees have an interest against disclosure of their identities because disclosure might subject them to embarrassment or harassment in their official duties or personal lives)). Here, Mr. Bloomer's allegations could be reasonably expected to lead to "harassment or embarrassment" if the names of the FBI agent and the AUSA are revealed as having been involved with Mr. Chavez. *Id.*

The Second Circuit has held that, in balancing a privacy interest with the public interest in disclosure under Exemption 7(C), a district court should consider:

> (1) the government employee's rank; (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways

7

to obtain the information; (4) whether the information sought sheds light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature. The factors are not all inclusive, and no one factor is dispositive.

*Perlman*, 312 F.3d at 107. In this case, the rank of the government employees at issue (an FBI agent and an AUSA) was relatively low. With respect to the degree of wrongdoing, the issuance of a re-entry visa may have been wrongful, but the evidence of such alleged wrongdoing is weak. Indeed, it was only Mr. Chavez who spoke of the visa and his alleged work as an informant. Furthermore, as DHS appropriately argues, Mr. Chavez's visa may have been entirely legal. Thus, Mr. Bloomer's suspicion of impropriety, though not patently frivolous, is simply that – a suspicion. Although it is not clear whether Mr. Bloomer has other ways of obtaining the information he is seeking, the information that he seeks would not shed significant light on a government activity, as the nature of that activity is already known. To the contrary, the only things revealed would be the names of the persons involved, and the release of those names would do little to further the cause of "let[ting] citizens know what their government is up to.'" *Amnesty Intn'l USA*, 728 F. Supp. 2d at 523 (citation omitted); *see also Halpern*, 181 F.3d at 297 ("there is little or no public interest in having the identities of private parties revealed because that information sheds little or no light on the [agency's] performance"). Finally, the information sought is related to those persons' job functions, and not their personal lives. *Perlman*, 312 F.3d at 107.

In analyzing the totality and weight of the *Perlman* factors, it is evident that a legitimate privacy interest is being weighed against a speculative public interest. The U.S. Supreme Court has noted that "where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 165 (2004). Moreover, the Supreme Court has "held that a presumption of legitimacy attends government actions

8

that may not be overcome on the basis of unsupported allegations." *Wood*, 432 F.3d at 89 (citing *United States Dep't of State v. Ray*, 502 U.S. 164, 179 (1991)). The court therefore finds that DHS has properly opposed disclosure under Exemptions 6 and 7(C), and is entitled to judgment in its favor on the redactions in question.

### 3. Exemption 7(D).

DHS has also redacted two pieces of information under Exemption 7(D). (Doc. 20-3 at 3, 10.) Exemption 7(D) allows the government to withhold "records or information compiled for law enforcement purposes" that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). To successfully invoke this exemption, the government must show that the person who provided the information did so "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993).

If the government is relying on an express confidentiality agreement, it must proffer "probative evidence that a claimed source of information did in fact receive an express promise of confidentiality." *Halpern*, 181 F.3d at 298. Proof of express assurances may be presented by

> declarations from the agents who extended the express grants of confidentiality, contemporaneous documents from the FBI files reflecting the express grants of confidentiality, evidence of a consistent policy of expressly granting confidentiality to certain designated sources during the relevant time period, or other such evidence that comports with the Federal Rules of Evidence.

*Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995) (cited in *Halpern*, 181 F.3d at 299). Conclusory allegations as to the existence of express confidentiality agreements are insufficient. *See Halpern*, 181 F.3d at 299 (rejecting exemption under 7(D) based on express confidentiality where "the Declaration relies on bare assertions that express assurances were given to the sources in question, and that the information received was treated in a confidential manner during and subsequent to its receipt").

9

Here, the Law Declaration states that "Exemption (b)(7)(D) has been asserted to protect from disclosure the identity of a deceased confidential source who provided information to the FBI under an express assurance of confidentiality." (Doc. 20-1 at 9.) DHS concedes in its summary judgment memorandum that the Law Declaration provides "little detail . . . concerning FBI's express assurance to their source." (Doc. 20 at 14.) Indeed, DHS has not submitted the sort of "probative evidence . . . such as . . . an official's personal knowledge about the source" that is generally required for express confidentiality. *Dipietro v. Exec. Office for United States Att'ys*, 357 F. Supp. 2d 177, 185 (D.D.C. 2004) (internal quotation marks and citations omitted). DHS must therefore rely upon an implied assurance theory.

In *Landano*, the Supreme Court adopted a "particularized approach" to implied confidentiality. 508 U.S. at 174-75. This approach considers factors such as the "character" of the incident at issue, as well as the source's "relation" to the incident. *Id.* The Supreme Court also noted that there may be additional "generic circumstances" to support an inference of confidentiality, such as where the nature of the incident would render the informant unwilling to speak, or where the informant is paid by the government for his or her information. *Id.* at 179. The nature of the crime itself, together with information about the subject of the investigation, may also provide a sufficient basis for inferring confidentiality. *See, e.g., Jimenez v. FBI*, 938 F. Supp. 21, 30 (D.D.C. 1996) (informant could reasonably infer a promise of confidentiality "given the serious nature of the criminal [drug] charges being investigated, and the fact that the [subject] had previously harassed and threatened government informants"); *Delviscovo v. FBI*, 903 F. Supp. 1, 3 (D.D.C. 1995) ("A major racketeering investigation focusing on groups and individuals involved in extortion, gambling, loan sharking, narcotics trafficking and interstate transportation of stolen property gives rise to such an inference [of confidentiality] without the need for elaboration.").

In this case, Mr. Chavez is alleged to have been a significant drug trafficker with access to sizeable financial resources. Such contacts with the drug trade, and possibly organized crime, would likely have led an informant to require an assurance of

10

confidentiality. The Law Declaration confirms that such confidentiality was assured. (Doc. 20-1 at 9.) The fact that both Mr. Chavez and the informant are now deceased does not alter this analysis. *See Halpern*, 181 F.3d at 300 ("what counts is whether then, at the time the source communicated with the FBI, the source understood that confidentiality would attach"). The court therefore finds that DHS has met its burden under an implied assurance theory, and is entitled to summary judgment with respect to its redactions under Exemption 7(D).

    **4. Exemption 7(E).**

The final exemption asserted by DHS is Exemption 7(E). This exemption protects "records or information compiled for law enforcement purposes" that, if revealed, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

DHS has applied Exemption 7(E) to various codes and case numbers. For example, on the first page of the TECS information, the TECS Record ID is redacted, as is information under the heading "Primary Action." The Law Declaration contends that "[t]he disclosure of these internal instructions, codes, and guidance would reveal both a law enforcement technique and an internal investigative practice," and could thus endanger future investigations "by exposing the details and type of information the agency uses in the course of the investigation." (Doc. 20-1 at 10-11.) Mr. Bloomer states in his memorandum that he "is not interested in TECS secret codes or case numbers." (Doc. 23 at 3.) Nonetheless, he again objects to DHS's response as being overly vague.

Courts have set "a relatively low bar for the agency to justify withholding" information under Exemption 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The exemption allows for withholding information "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for

11

the chance of a reasonably expected risk." *Id.* Mr. Bloomer has not argued that the codes sought to be protected by Exemption 7(E) are free of such risks. Allowing the government the usual presumption of good faith, and given the liberal standard for application of Exemption 7(E), the court finds that DHS has met its burden. *See, e.g., Abdelfattah v. USCIS*, 2012 WL 1085806, at *3 (D.D.C. March 30, 2012) (upholding redaction of FBI program codes under Exemption 7(E)). DHS is therefore entitled to summary judgment in its favor with respect to information withheld under Exemption 7(E).

## Conclusion

For the reasons set forth above, DHS's motion for summary judgment (Doc. 20) is GRANTED, and Mr. Bloomer's motion for summary judgment (Doc. 23) is DENIED. SO ORDERED.

Dated at Rutland, in the District of Vermont this 2nd day of May, 2012.

Christina Reiss, Chief Judge
United States District Court